Thank you. Good morning, your honors. May it please the court. I'm Randy Baker. I represent the plaintiff and appellant Virgil Lorenzo. I would like to reserve three minutes for rebuttal. What I'm going to address this morning is the court's decision to grant summary judgment on Mr. Lorenzo's claim that he was terminated in violation of Title VII based on his Filipino nationality. The district court based its decision on two findings. First, it stated that Mr. Lorenzo's evidence failed to establish a prima facie case of discrimination under the McDonnell-Douglas test. And second, the court stated that even had he done so, his evidence failed to establish the defendant's justification for the decision, which was his performance as a teacher was inadequate, was untrue. The court erred in both of these findings. Now, its determination that Mr. Lorenzo failed to make a prima facie case of discrimination turned on two points. First, the court stated that Mr. Lorenzo failed to show his performance was adequate. Now, under the Aragon case, all that a plaintiff need do in a civil rights case to satisfy this requirement is to identify tasks that were required to perform the job and identify the way in which they adequately were discharged. In this case, Mr. Lorenzo more than did that. He was on a performance plan at the time of his termination. The performance plan had been commenced by Mr. Grade, the principal who fired him. In October, Mr. Lorenzo said that as of December, he had complied with all the requirements of the performance plan and indeed that Mr. Grade had told him December 3rd, one week before his termination, that he was satisfied with his performance. In addition, Mr. Lorenzo systematically addressed each of the factors that Mr. Grade cited as justifying the termination. Lack of effective communication with parents, failure to maintain order in the classroom, failure to assign projects that enabled students to develop adequate synthetic and analytic skills with respect to their performance. Mr. Lorenzo, in fact, had discharged all those obligations, so he more than satisfied. May I ask, so is it your position that a an affidavit from Mr. Lorenzo that he was improving is enough to get past the prima facie element of the McDonnell Douglas test? Is that all that's needed? Just saying, I believe I was improving. Well, I don't believe that his affidavit was limited to that sentence. I think his affidavit included the affirmance that, in fact, he had complied with and satisfied all the requirements Mr. Grade had established and that Mr. Grade admitted that on December 3rd, one week before his termination. And in addition, above and beyond all that, Mr. Lorenzo's five-page affidavit recites the specific ways in which he was effectively communicating with parents, effectively presenting students with projects that required they develop the skills mandated by the Department of Defense. I think Judge Sanchez is asking more of an evidentiary question of, is it just enough for the plaintiff to say, I'm doing great in my job, and that's enough to establish a prima facie case? Okay, so I think, Your Honor, there are two parts to that. Is it just enough to abstractly, in a conclusory fashion, make that assertion unclear? Some of the cases I cited from other circuits say, yes, that's enough. Eragon doesn't really do that, the Ninth Circuit case. What Eragon describes is a case in which the plaintiff identifies, I was doing the same amount of work as other people. I was gathering the same amount of material as garbage. Mr. Lorenzo's statements are not conclusory for two reasons. One, they recite an admission by Mr. Gray that he had complied. So it's not Mr. Lorenzo's judgment here. He's stating the person who fired him made that conclusion. And of course, in summary judgment, that's true for now. So your position is that the plaintiff's word is enough, as long as it's detailed, in terms of how they're satisfying their job requirements? That's what Eragon holds. Okay. Can I move you to pretext? So assume that we agree that your client made a sufficient prima facie case. He also is going to have to establish that the school or the principal's justification for why they fired him was a pretext for a discriminatory motive that they really had. Well, Your Honor, I agree and disagree with that. Under the McDonnell-Douglas test, absolutely. And I think he does. And I'm going to show that in a second. But I would point out under Cordova, and not just Cordova, there's a large body of case law in the Ninth Circuit holding, in addition as an alternative to proving your case based on the McDonnell-Douglas assumptions, you can prove your case through some combination of circumstantial or direct evidence. The old-fashioned way, the way civil litigation typically works. In this case, in fact, Mr. Lorenzo's evidence, as in Cordova, satisfied both. So in terms of the, let me get to pretext, because his circumstantial evidence, which under Cordova, if adequate, automatically creates a triable issue of fact, includes pretext. So what's that circumstantial evidence? Mr. Lorenzo is instructed by Mr. Gray in September to meet with a parent, Ms. Junk. And the reason he's to meet with her includes Ms. Junk has, quote-unquote, concerns about Mr. Lorenzo's accent. Mr. Lorenzo then meets with Ms. Junk. Ms. Junk proceeds to speak condescendingly to him, to correct his pronunciation, and to opine that it's doubtful that a person with his accent should have been hired. On summary judgment, we can infer. Am I right to understand the record to show that the performance problems that Mr. Gray was concerned about arose before this issue with the parent and his accent? No, that's not my understanding of the record at all. My understanding of the record is the performance problems arose at the same time and after. I'm not aware of anything in the record indicating Mr. Gray found Mr. Lorenzo's performance deficient prior to the time at which he instructed Mr. Lorenzo to speak with the parent, Ms. Junk. Now, under Fragrante, and I think it's a counter assumption is incredible, accent is a surrogate for national origin. It's an illegal basis under Title VII for making an employment decision, except in cases in which there's evidence showing that a certain accent is required for the job. Mr. Baker, can I ask, assuming you're right that the parent had animus toward Mr. Lorenzo, why is there any evidence that that was a central cause of Mr. Gray's own actions? Why impute the parent's own feelings onto the school? Well, the reason one does that is because by instructing Mr. Lorenzo to speak with her about his accent, about her concerns about his accent, Mr. Gray has shown that he understands Mr. Lorenzo's accent to be material to his performance as a teacher. Excuse me for interrupting, but Mr. Gray interviewed Mr. Lorenzo at the outset, and so one could reasonably infer that he knew that he spoke with an accent. And so that's one question, and the second point that I'd like you to address, is there any evidence that Mr. Gray knew about the specific details that you argue relating to Mrs. Junk? It seems like a step too far to say, if a principal says speak to this parent about concerns about the accent, it may be that Mr. Gray thought perhaps students are having difficulty understanding the material because of the accent. That seems legitimate as opposed to this inference that there is discriminatory animus. But is there evidence in the record that Gray knew anything about the condescension, about the additional derogative comments relating to Mrs. Junk? Yes and no. So let me address your first question, and then I'll address the second one. Thank you. The same actor, you're referring to the presumption of the same actor. If you hired someone knowing they have an accent, then you're not firing them a few months later because you already knew that because they had an accent. I agree. In this case, what's going on is Mr. Gray, the principal, is enforcing, in effect, the prejudice of a customer. Now, the Supreme Court in Bostock indirectly, and this court in the Fernandez case expressly addressed, and lots of courts have. Title VII does not just protect employees from the personal animus of their employer for belonging to a protected class. Title VII protects employees from any non-employment related use of their membership in that class, even if it's for the purpose of satisfying a client or some third party. That's what's going on here. Now, in terms of your second question, what reason is there to believe that Mr. Gray was acting on her behalf, so to speak? Well, the reason is, co-zalter, chronology. Mr. Gray, you've identified a perhaps innocent explanation. That's fine. That's one inference. At summary judgment, we draw all reasonable inferences for the plaintiff. Under co-zalter, the fact that Mr. Gray identified Mr. Lorenzo's accent as something warranting that he needed to defend and justify in some way to a parent, and within three months, less than three months, he's fired, that gets him into court. That raises a triable issue of fact, regardless of whether or not— As I understand it, there is nothing in the remedial plan that related to Mr. Lorenzo's accent. That's correct. So if there was this concern about an accent or Mr. Gray was adopting the views of the parent, wouldn't we have seen something in the remedial plan itself that related to this accent difficulty that the parent was raising? Only if Mr. Gray was not well advised by counsel that citing accent as a basis for termination is unlawful absent evidence that his accent somehow undermined his performance, and there's nothing in the record other than Ms. Gray's objections, which in light of the inferences made for a plaintiff, we're entitled to assume reflect her animus towards his national origin. So your best argument, it seems to me, then, is that because Mr. Gray directed Mr. Lorenzo to speak to the parent about the parent's concerns about his accent, we should infer enough as a triable issue that Mr. Gray was adopting these views and taking action because of that animus. Well, and the chronology and codes alter the fact that within a month in October, he placed them on this improvement plan. Less than three months later, he fires him. And I should add, and it's also in the record, Mr. Lorenzo stated that on December 3rd, one week before he's terminated, he meets with Gray and Gray says, I approve of your progress. You're doing fine. You're doing what you're supposed to be doing. After that, he meets again with Ms. Jump. She becomes irate, and almost immediately he's terminated. That chronology plus the fact that we know Ms. Jump has spoken with Mr. Gray about Mr. Lorenzo's accent and the fact that at the termination meeting, Mr. Gray cites inadequate communication with parents and deficient performance of students. That's exactly the things that Jump was complaining to Mr. Lorenzo about. That also authorizes the inference that yes, Jump communicated again to him. I'm unhappy with this guy. And he gets fired. And there's more questions. I'll reserve the remaining few seconds as rebuttal. All right, Mr. Keene. Thank you, Your Honors. Yes, may it please the court, my name is Douglas Keene. I'm appearing on behalf of the Department of Defense. The current secretary is Lloyd Austin III, automatically substituted as defendant. The court made no mistakes in this case. What the plaintiff's arguments come down to is whether or not unreasonable allegations are sufficient to overcome summary judgment. The court considered all the evidence, and notwithstanding the new standards that the plaintiff attempts to argue and Mr. Lorenzo attempts to argue in a reply, the court did take into consideration all of the factors and all of the relevant evidence in this case, even above and beyond what was argued at the summary judgment level, and gave Mr. Lorenzo every benefit of consideration to which he was due. And the court's order and the record are very clear about this. The issue is, can Mr. Lorenzo on bare allegation provide passable testimony on the state of mind of other actors? And the answer to that is no. This is the whole point of the pretext analysis, is that Mr. Lorenzo has to provide evidence of causation, that the actions that he's objecting to were taken because of his protected characteristics, and that evidence is not there. He's now arguing that on the basis of proximity, notwithstanding the unreasonableness of his claims, that on the basis of proximity renders his termination unreasonable. But that overlooks precisely the standard that he appears to try to argue and reply, which is the totality of this record. The totality of the record shows that Mr. Lorenzo was not meeting minimum teaching standards and was in fact causing harm to the academic progress of his students from the moment he started. And when Mr. Grade intervened and attempted to assist Mr. Lorenzo with this, he wasn't asking about one or two incidents. He had a log of parental complaints. He checked and saw that Mr. Lorenzo had not entered grades. He would add, nowhere in Mr. Lorenzo's aversions does he say that he ever caught up with the grades. Nowhere does he deny that he lost students' work and required students to redo that work at the peril of their own preparation. Nowhere does he deny that the adjustments that he claims were acceptable to the curriculum actually incorporated the DODEA curriculum. They did not. The best he does is he states in his affidavit that he produced a prepackaged PowerPoint that Mr. Grade thought was of good quality. It wasn't Mr. Lorenzo's work product. It was a prepackaged PowerPoint lesson. Mr. King, can I ask, I'm sorry to interrupt, is it your understanding that the concerns that Mr. Grade had or that he voiced came after the meeting, the initial meeting with the parent? Or are there indications in the record that some of those concerns preceded that meeting? That those concerns preceded that meeting. In fact, before, because again, the concern, and this is what the court identifies and Mr. Lorenzo does not, the concern is when was Mr. Grade aware of any of these things? Mr. Grade became aware of a host of parent complaints. Mr. Lorenzo does not address the fact that out of, you know, say a dozen parental complaints, Ms. Jump was only one. None of the other parents had any concerns about his accent. They had concerns about other behaviors and that was what Mr. Grade was discussing with Mr. Lorenzo. Mrs. Jump's conversation happened at some point in that initial phase. But Mr. Grade came to that interaction with all the other observations that went along with that. And Mrs. Jump's concern, as the court pointed out, it's nowhere clear that her concern was that he had an accent and that that implied a certain ethnic background that she had a problem with. It implied that she, like all of the other parents who spoke to Mr. Grade, had concerns that her child couldn't understand and wasn't learning and that learning wasn't being documented. And Mr. Grade confirmed that by checking grade speed and checking the clear objective indications that Mr. Lorenzo was meeting the minimum performance standards before speaking with Mr. Lorenzo the first time. Let me ask you about the Rehabilitation Act claim with the cell phone incident in the classroom. Why isn't that sufficient to survive summary judgment if we understand it to be that Mr. Lorenzo didn't respond immediately to the cell phone? It may have been related to his hearing issues. And then Mr. Grade expressed anger or discontent with the way that he had handled that. Are those things enough to survive summary judgment on that claim? They are not, Your Honor. And the reason is that the dispute around the cell phone incident, we have to point out again, plaintiff is now asking for kind of a freestyle application of the full circumstances of this case to this analysis. And a single incident with the cell phone at most shows that there was a difference of opinion between Mr. Lorenzo and Mr. Grade about how Mr. Lorenzo should have handled that incident. Mr. Lorenzo does not dispute that he heard the cell phone. He did. He does not dispute that he had the ability to identify whose cell phone it was. He had the ability to take the cell phone, ultimately, and to administer discipline. It's just that he didn't do it. And Mr. Grade's concern is you're not managing the classroom. If you needed some sort of accommodation in order to hear cell phones or if you had not heard the cell phone at all, it might be a different story. But Mr. Grade was not concerned about that. Mr. Grade's concern was you clearly have the ability to do this job. I hired you on that expectation. You are not doing the job. And the job in that circumstance, one isolated circumstance, was to immediately intervene and do what Mr. Lorenzo eventually did. He just didn't do it at the time. And that, in Mr. Grade's observation, was indicative of Mr. Lorenzo's overall pattern of failure to manage his classroom and interact appropriately with the students. Likewise, unless the court has other specific questions, I would like to touch on the argument that the court applied the wrong standard here. I think it is very important. I understand that there is some criticism or the court has questioned the application of the Godwin standard of requiring specific and substantial evidence on pretext. The point that I think gets lost in the briefing, particularly in the reply, is that the McDonnell-Douglas standard is not formulistic. It's a framework. It's simply a means for understanding the totality of the relevant circumstances and evidence in the case. What the court did was analyze all of the relevant evidence in the case, but did it in the step-by-step framework that's proposed by the – that's suggested by the McDonnell-Douglas framework. Part of that approach, part of that flexibility, is identifying that not all cases are the same. And in the Aragorn case, for example, involved different showings of fact. The court applied the correct analogies in this case, which is that a defendant – a plaintiff needs to show that he was performing the job adequately, that he was not dismissed simply for improper performance. And this was at the forefront of both Mr. Gray at the time that he documented all of the concerns and the ongoing concerns of failure to remediate Mr. Lorenzo's behavior. And the court took that into consideration. The court properly applied the McDonnell-Douglas standard here. And in so doing, a freestyle totality-of-the-circumstances approach is included in that. And if the court wishes, we can get into specifics in the court order that shows that this court very sensitively and awarely, with a great deal of awareness, took into consideration all of the relevant facts in this matter. But what Mr. Lorenzo did not do was present material, relevant facts in response. His rebuttal, his affidavit, which he rests almost solely on, is actually indicative of everything that Mr. Gray had concerns about. Mr. Lorenzo, at times correctly and at times incorrectly, states what the criticism of his performance was. His responses are immaterial and irrelevant, highly anecdotal, but they do not relate to the concerns that are actually presented. And so now we're stuck in this situation where we have to argue inference upon inference upon inference. Not only do we have to argue inference about what the facts of the interactions were, but we then have to argue inference about the state of mind of third parties. That Mr. Lorenzo is not competent to present evidence on. And this is one of the things that the court made a specific note of in the last page of its opinion. That a plaintiff's belief that a defendant acted from discriminatory animus is not sufficient to overcome summary judgment. And that is what Mr. Lorenzo's case ultimately comes down to, is his belief, irrespective and in contradiction to the facts, that he does not dispute on the record. And that is the reason why we believe that the district court's decision needs to be upheld. All right, it doesn't look like there are any further questions. Thank you for your argument. Mr. Baker, I think you have, we'll put an even minute on the clock for you to respond. Thank you, Your Honor. Counsel's argument is appropriate for a jury. The way it works on summary judgment is all the averments we make that are based on percipient knowledge count as true. In this case, game over, Mr. Lorenzo stated that a week before he was terminated, Mr. Gray told him that his performance was adequate. That he was complying with everything required of the performance plan. That's the end of that. The Basta case explains that even if it's true that Mr. Lorenzo's performance was inadequate, in fact, we should assume for the moment that Mr. Gray put him on a performance plan because it was inadequate in October. The plan was scheduled to terminate in January. Why was he fired in December? It was presumed that until January, he would be inadequate. No explanation was given. Finally, Kosalter states that if any element whatsoever of the defendant's justification is shown to be untruthful, and Mr. Lorenzo has done so, one must infer on summary judgment that none of it is valid. You get to go to the jury. Unless the court has further questions, I've used up my time. Thank you, Counsel. Thank you. All right, Lorenzo v. Shanahan is submitted.
judges: FORREST, SANCHEZ, Freudenthal